# Federal Defenders
## OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and
Attorney-in-Chief*

*Eastern District*
Peter Kirchheimer
*Attorney-in-Charge*

October 30, 2011

The Honorable Eric N. Vitaliano
United States District Court Judge
United States District Courthouse
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:  United States v. Juan Mina 10-CR-158 (ENV)

Dear Judge Vitaliano:

I write in advance of Juan Mina's sentencing date. On April 1, 2011, Mr. Mina pled guilty to a single count indictment charging him with illegal re-entry in violation of 8 U.S.C. § 1326. As we will discuss in this letter, Mr. Mina is struggling with a painful personal tragedy. In light of the numerous sympathetic §3553(a) factors present in this case, we respectfully ask the Court to consider a non-guidelines sentence below the applicable guidelines range of 30-37 months.

As an initial matter, we do not object to the probation department's guidelines calculation as set forth in the PSR, which calculates an estimated guideline's range of 30-37 months. This guidelines estimate is based upon a adjusted offense level of 17 and a criminal history category of III. Nevertheless, we believe that a guidelines sentence here would be greater than necessary to achieve the goals on sentencing in this case.

## BACKGROUND

Juan Mina is a devoted father who is struggling to overcome the recent murder of his son. He has lived a difficult life and returned to the United States only to be closer to his family. As he will tell the Court in his own words at sentencing, he is remorseful for his conduct and wants only to return home to grieve with his ailing mother and father.

As the presentence report notes, Juan Mina was born on December 7, 1960 in Buena Ventura, Colombia. He grew up in extreme poverty. His father made money as tree cutter and his mother worked at a local fish market. Nevertheless, despite a lack of financial

resources, his family remained very close. When he grew up, he eventually started a family of his own.

When he was 24 years old, he realized that there were very few financial opportunities to him in Colombia and moved to the United States in 1995. He hoped to find better financial opportunities in the United States so that he could better provide for his children. During his time in the United States, he has maintained regular employment as a construction worker. He has maintained close contact with his children and paid regular child support. In fact, his oldest son, Jeisson, came to live in the United States with him.

Mr. Mina was thrilled for his son Jeisson to move to the United States and they remained close. As Jeisson matured as an adult, they become more like brothers than father and son. Two years ago, shortly before his incarceration in the instant case, Mr. Mina's son Jeisson was murdered following a botched robbery attempt. Even after a lifetime struggling with poverty, drug abuse, and being in and out of the criminal justice system, the murder of son caused him more pain than he could ever imagine.

In the wake of his son's murder, Juan Mina has struggled with feelings of loneliness, despair, and hopelessness. Sadly, he relied upon drugs and alcohol to stem his feelings of pain and frustration. It was against this backdrop that he was discovered and prosecuted here.

## JEISSON MINA'S MURDER CASE

Early after Mr. Mina's arrest in this case, we were contacted by a New York Police Department detective seeking permission to speak to Mr. Mina about his son's case. The detective believed that Mr. Mina had some information that would help progress his son's case. Upon information and belief, this detective also contacted AUSA Lifschitz in connection to this case. Mr. Mina was eager to assist in this investigation in any way both because he wanted justice for his son but also in hopes that his assistance might be considered as a sentencing factor in this case. After granting this detective permission to speak to Mr. Mina, he sat down for an extensive interview with the detective at the MDC.

After speaking with Mr. Mina, counsel spoke with the NYPD detective again who assured him that Mr. Mina's information was useful and had given him new leads to follow in his case. We asked whether Mr. Mina might receive some credit for his assistance in this investigation and the officer assured us he would speak to the prosecutor. However, shortly after this conversation, the government informed us that this detective did not wish to pursue additional cooperation with Mr. Mina. Accordingly, the government would not offer a cooperation letter.

Nevertheless, while Mr. Mina's assistance may not have risen to the level of substantial assistance, we believe that Mr. Mina cooperated with this detective in good faith. This detective assured undersigned counsel that Mr. Mina had provided useful information in his interview and that, as a result he had additional leads to pursue in his

investigation. We ask the Court to consider Mr. Mina's participation in this investigation as a 3553(a) factor in considering a modest downward departure for Mr. Mina.

## MR. MINA'S PROPOSED SENTENCE

In light of the personal circumstances of Mr. Mina's life, we respectfully ask the Court to consider a modest variance below the applicable guidelines range of 30-37 months. As the presentence report notes, MDC staff diagnosed Mr. Mina with depression as a result of his son's murder. PSR ¶50. His recent interaction with the NYPD has only worsened his feelings of despair and hopelessness. A modest departure would give Mr. Mina some measure of hope. For him it would be sign that the Court recognizes and acknowledges his recent suffering.

As Mr. Mina's presentence report makes clear, he has no convictions for any acts of violence. While he was convicted of a drug trafficking offense in his youth, his recent criminal history consists solely of a drug possession charge. While we do not seek to diminish the seriousness of illicit drug use, we believe that drug addition would best be addressed through drug treatment rather than additional incarceration.

## CONCLUSION

Juan Mina is a 50 year-old father who is struggling to cope with the recent and tragic murder of his son. To his credit, he has spent his time in custody contemplating the seriousness of his actions. At this point, he wants only to return to his family so that he can spend whatever time he has left with his parents in peace and solitude. For the foregoing reasons, we respectfully request that the Court consider imposing a sentence below the applicable guidelines range of 30-37 months.

Sincerely,

Len Hong Kamdang
Counsel to Juan Mina
Federal Defenders of New York, Inc.
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
(718)407-7414

Copies to:

Allon Lifschitz, Assistant United States Attorney (via ECF)

Lisa Langone, United States Probation Officer (via hand delivery)

Juan Mina 12224-265 (M.D.C.) via first class mail